UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Western Division

| | |
|---|---|
| HARRY HOWREN,<br>    Plaintiff; | )<br>)<br>) |
| -vs.- | )   No. CV-98-P-0862-W<br>) |
| STILLMAN COLLEGE,<br>    Defendant. | )<br>)<br>)<br>) |

FILED
00 FEB 25 AM 9: 35
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
FEB 25 2000

OPINION

Oral argument on the defendant's September 17, 1999 Motion for Summary Judgment was heard in chambers on December 6, 1999. For the following reasons, summary judgment is due to be granted in full.

Facts[1]

The plaintiff, Harry Howren, is a 54 year-old white male who in 1994 began teaching business and management courses at Stillman Management Institute ("SMI"), a continuing education institution operated by Stillman College ("Stillman").

In October 1996, Aubrey Womack, who had earlier interviewed the plaintiff for a position at SMI, called Howren and asked him to fill in for Dr. Livy Wilson, a Stillman College professor who had fallen ill. The plaintiff taught one marketing class at Stillman for the remainder of the semester. In December 1996, Howren was hired on a temporary, full-time basis to teach Wilson's

---

[1] The recitation of facts is presented in the light most favorable to the plaintiff.

1

spring courses. His contract began in January 1997, and expired in early May. He was assigned to teach one class during the summer.

In June 1997, an advertisement for the permanent, tenure track position vacated by Wilson ran in the Tuscaloosa News. This position required the candidates to have earned a Ph.D, and was advertised as such. *See* Pl.'s Compl. at 4. Howren has an MBA from Jacksonville State University, and has taken some Ph.D level courses, but does not have a doctorate. He applied for the position, along with two female candidates, both of whom had Ph.Ds outside the business field. None of the three candidates were hired.

The defendant states that after failing to fill a permanent position, Stillman continued to look for someone to teach Wilson's courses on a temporary basis, the courses taught by Howren from October 1996 to May 1997. Womack and/or Dr. Joseph Gore[2] considered both Howren and Lois Gwinn, a 44 year-old black female, who had also taught at SMI. Prior to coming to SMI, Gwinn had worked at a number of computer technology companies, including IBM, Digital Equipment Corporation, and Wang Laboratories. She has a masters in finance from the University of Alabama, but does not have a Ph.D. Gwinn was hired to teach Wilson's marketing classes for the fall of 1997, and signed a contract to work on a temporary basis. *See* Pl.'s Ex. 12 (The contract of Gwinn for the position of "Temporary Full-Time Instructor of Marketing," to run from August 11, 1997 to December 15, 1997).

On April 9, 1998, the plaintiff filed suit under Title VII and the ADEA alleging that Stillman discriminated against him on the basis of race, sex and age by replacing him with a

---

[2]The parties dispute who made the ultimate decision on the teaching position. This issue is not material to summary judgment because whether the decisionmaker was white or black would not change the court's analysis.

2

younger black female.

## Analysis

To succeed on a Title VII or ADEA claim of disparate treatment on the basis of race, sex or age, the plaintiff must prove that the defendant's employment decisions were motivated by discriminatory intent. See Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 986 (1988). The plaintiff can prove intentional discrimination by presenting direct evidence of a decisionmaker's discriminatory intent, see Buckley v. Hospital Corp. of America, Inc., 758 F.2d 1525, 1529-30 (11th Cir. 1985), or by stating a case based on circumstantial evidence. See McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). The plaintiff has not presented direct evidence that Stillman College discriminated against him. Therefore, to state a claim of disparate treatment based on circumstantial evidence, the plaintiff must present substantial evidence of all of the elements of a Title VII claim: (1) he belongs to a protected class; (2) he was qualified for the position in question; (3) he suffered an adverse employment action and (4) this adverse decision was causally related to the status of the plaintiff as a member of the protected class. See Jones v. Firestone Tire and Rubber Co., 977 F.2d 527, 537-38 (11th Cir. 1992).

The McDonnell-Douglas test affords the employer an opportunity to articulate a legitimate, nondiscriminatory reason for the employment decision to rebut the presumption of discrimination raised by the plaintiff's prima facie case. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). Thereafter, the burden of proof shifts to the plaintiff to show that the asserted reason was a pretext for discrimination. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993). To survive a motion for summary judgment on a claim of disparate treatment,

3

the plaintiff must present credible evidence such that a reasonable jury could conclude that the defendant was actually motivated by intent to discriminate against him on the basis of race, sex or age.

Howren has presented evidence that a younger black female was offered a position that he applied, and was qualified for.[3] However, the evidence he has presented does not tend to show that the decision was causally related to his race, sex, or age.

None of the evidence submitted by the plaintiff suggests that his sex or his age was a factor in the decision not to hire him for the teaching position. The plaintiff does not even discuss in his brief whether the defendant's articulated reasons are a pretext for illegal discrimination.[4] Therefore, summary judgment is due to be granted as to these claims.

The evidence presented by the plaintiff in support of his race discrimination claim does not show that the defendant's articulated reason for failing to hire Howren to teach in the fall semester was a pretext for illegal discrimination. The defendant argues that it hired Gwinn to fill the position vacated by Dr. Wilson on a temporary basis because the search for a permanent replacement had been unsuccessful. Gwinn was selected due to her extensive experience at high-profile technology companies and it was hoped that she could provide networking opportunities with the corporate world. Additionally, the defendant states that Stillman had embarked on a

---

[3] Although the court describes Howren's claim as a "failure to hire," he presents his case as more of a termination claim– arguing that he was "replaced" by Gwinn. Although the temporary contract that the plaintiff had entered into with the defendant strongly suggests that the plaintiff's term of employment expired and he was not rehired, the issue is irrelevant for the purpose of the analysis. The plaintiff must present credible evidence from which a jury could conclude that he was intentionally discriminated against when he was not afforded the opportunity to teach in the fall of 1997, and he has failed to do so.

[4] *See* Pl.'s Brief at 9-10. The plaintiff's brief states that, for his claim of sex discrimination, he will devote his argument to the issue of pretext, but then he fails to do so. The plaintiff also fails to address defendant's argument that plaintiff cannot show pretext as to his age discrimination claim.

4

program to integrate computers into the business curriculum, and that Womack believed that Gwinn was the candidate who could best accomplish that objective.[5]

As relevant evidence of illegal discrimination, the plaintiff submits his testimony that third parties told him that race was a factor in Stillman's employment decisions; his belief that Gwinn was not as qualified for the position; and the fact that she made a higher salary for the same work.[6] Even viewed in the light most favorable to the plaintiff, this evidence does not tend to show that the plaintiff was discriminated against with regard to the discrimination claim here at issue.

As circumstantial evidence that race discrimination was prevalent at Stillman, Howren argues that he was discriminated against when, in January or February, 1995, he applied and was not selected for the position of director of SMI. The plaintiff testified he was told by Dr. John Robb, the former assistant director of SMI, that Dr. Eddie Thomas was awarded the position because he was black and would be better received by the Stillman faculty and the community. *See* Pl.'s Dep. at 76-80. The plaintiff also testified that James Ford, who was on the directorial search committee, stated that one reason Thomas was hired was that he knew the faculty, the people in the community, and the president of Stillman. Ford did not mention that race was a factor in the decision, although the plaintiff interpreted his comment that way. *See* Pl.'s Dep. at

---

[5] *See* Womack Dep. at 60-61, testifying that his belief that Gwinn could help increase the use of computers by business students was "a major, major thing that was a positive for her."

[6] The plaintiff also offers other arguments, such as that the number of black and white faculty members at Stillman suggests that African-Americans receive preferential treatment, and that the advertisement in the Tuscaloosa newspaper was not a legitimate search for a qualified candidate. These arguments are irrelevant to the question of whether the plaintiff was discriminated against when he was not selected to teach marketing courses in the fall of 1997.

5

102. These comments have little, if any, relevance to the issue of whether Howren was later discriminated against when applying for the teaching position, and the mere speculation of a third parties-- particularly of one who was not involved in the hiring decision-- has little probative value.

Although the plaintiff submits that Gwinn was not as qualified for the position as he was, the court sees no evidence that she was unqualified. Aside from determining whether an employment decision was discriminatory, federal courts do not second guess an employer's business decisions. Absent illegal discrimination, an employer is free to hire and terminate employees for any reason at all. *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984). It is not for the federal courts to determine who is the most qualified applicant for a position, particularly when there is no indication that discriminatory considerations came into play during the hiring process.

The defendant's decision to pay Gwinn more than the plaintiff is also a business decision that alone does not suggest that race was a factor in her hiring. Other than the mere fact that she was paid more in the fall than he was paid in the spring, the plaintiff submits no evidence to support a finding that the pay differentials were on account of race. From the evidence presented by the plaintiff, a reasonable jury could not conclude that the defendant was motivated by illegal considerations of race when it hired Gwinn instead of Howren. Accordingly, summary judgment is due to be granted as to the plaintiff's race discrimination claim.

## Conclusion

For the foregoing reasons, summary judgment is due to be granted on the plaintiff's race,

6

age and sex discrimination claims. This case is due to be terminated, with costs, but not attorney's fees, taxed against the plaintiff.

Dated: _February 24_, 2000

_____
Judge Sam C. Pointer, Jr.

Service List:
    Alicia K. Haynes
    Frank Merriman Cauthen
    Peyton Lacy, Jr.
    James C. Pennington
    J. Trent Scofield